UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MUCKROCK, LLC,                                    *
                                                 *
          Plaintiff,                             *
                                                 *
     v.                                          *        Civil Action No. 1:20-cv-02474 (JMC)
                                                 *
CENTRAL INTELLIGENCE AGENCY,                     *
                                                 *
          Defendant.                             *
                                                 *
*     *     *     *     *     *     *     *     *     *     *     *     *

PLAINTIFF'S MOTION TO COMPEL
DEFENDANT TO SEEK AN *OPEN AMERICA* STAY

Plaintiff MuckRock, LLC ("MuckRock") commenced this litigation against Defendant

Central Intelligence Agency ("CIA") in 2020 to obtain copies of various CIA internal rules and

regulations. (Compl., Dkt. #1, ¶¶ 13-14 (filed Sept. 4, 2020).) After MuckRock commenced this

litigation, CIA began processing responsive records and began releasing records at a rate of

approximately seventy-five records/two months.[1] (J. Stat. Rep., Dkt. #13, at 2 (filed Feb. 5,

2021).) As of this writing, CIA claims that approximately 550 records remain to be processed (J.

Stat. Rep., Dkt. #18, at 2 (filed Dec. 6, 2021)), which means that, if CIA continues at its current

rate of production, CIA will complete its processing of responsive records in approximately

fourteen months—in February 2023. MuckRock maintains that CIA cannot further delay the

resolution of this case by more than year based simply on status reports and standard practices

and hereby asks the Court to require CIA to satisfy the strict requirements established by the

D.C. Circuit in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir.

---

[1] There is some ambiguity about exactly how many pages CIA has been processing so far, since responsive records vary in length, but a statistical survey of the records released so far yields a median record length of six pages and a mean record length of 8.46 pages, meaning that CIA has been—and plans to continue—processing approximately 450-635 pages every two months.

1976), or else be ordered to produce all responsive records within six months. As explained in the following memorandum, which has been included in this Motion due to its short length, the Court should grant CIA's Motion.

The undersigned attempted several times to ascertain CIA's formal position on this Motion, but has received no response. CIA is accordingly presumed to oppose this Motion, since it has made no move to change its processing rate or propose an alternative arrangement despite being informed of MuckRock's intentions in October.[2] A proposed Order is attached to this Motion.

### Memorandum of Points and Authorities

In cases where an agency seeks to postpone briefing by a significant period, it is well-established that the agency must seek an *Open America* stay justifying the delay (and, accordingly, justifying the processing speed causing the delay). In such a motion, an agency must show "exceptional circumstances" to meet the "substantial burden [placed] on the government to justify to the courts any noncompliance with FOIA time limits." *Open Am.*, 547 F.2d at 617 (Leventhal, J., concurring). An *Open America* stay may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency resources are inadequate to process the requests within the time limits set forth in the statute; *and* (3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4) the agency shows 'reasonable progress' in reducing its backlog of requests." *Elec. Frontier Found. v. DOJ*, 517 F. Supp. 2d 111, 120 (D.D.C. 2007) (emphasis in original) (quoting

---

[2] When consulted regarding the 6 October Joint Status Report, the undersigned emailed CIA's counsel, "I'm ok with this JSR, but be advised that if CIA doesn't step up its production between now and December to something significantly more than 75 docs/2 mos. I'm going to ask the judge to order them to justify an Open America stay to justify the delay. Otherwise they won't finish until Feb 2023, which is not reasonable."

*Wilderness Soc'y v. DOJ*, No. 04-650, 2005 U.S. Dist. LEXIS 20042, at *31-32 (D.D.C. Sept. 12, 2005)).

Over the course of this litigation—and in other cases in which the undersigned has been involved—the Government has taken the unusual position that an *Open America* stay is not required when the agency in question is processing records, and that it is only necessary when the agency seeks to delay its *commencement* of the process. In other words, according to the Government, if CIA seeks to wait until June 2022 to begin processing records, which it will complete processing in September 2022, it must meet the strict requirements for an *Open America* stay, but if it seeks to slowly process records until February 2023, it may simply cite its preferred production rate and rely on the Court's inherent authority to enter scheduling orders as an exercise of discretion. There is no defensible reason for such a dichotomy, and such an extreme delay in the resolution of a FOIA case is beyond the scope of the Court's inherent authority to manage its docket and is the *raison d'être* for the *Open America* line of jurisprudence. It is well-established that an agency has complied with FOIA when it *completes* its processing of responsive records, not when it *begins* it. If the purpose of the heightened burden for an *Open America* stay is "to justify to the courts any noncompliance with FOIA time limits." *Open Am.*, 547 F.2d at 617 (Leventhal, J., concurring), then it must apply to "*any* noncompliance with FOIA time limits," *id.* (emphasis added), regardless of whether the noncompliance is due to a delay in the commencement or the completion of the process.

*Open America* itself dealt with a district court which directed the agency to immediately process the plaintiff's request. That order was reversed and the stay was granted after "exceptional circumstances" were found, but the *Open America* stay was created as, and remains, an exception to the default rule that agencies must comply with all of FOIA, including the

statutorily imposed deadlines. An agency's "good faith and due diligence" remain the "touchstones underlying FOIA's statutory scheme." *Judicial Watch, Inc. v. DHS*, 895 F.3d 770 (D.C. Cir. 2018) (quoting *Open Am.*, 547 F.2d at 616). A district court is obligated to determine that an agency "has organized its records management systems to enable prompt determinations to produce records or to invoke an exemption, and to monitor when necessary an agency's progress in adjusting its records management systems to enable it to comply with FOIA." *Id*. at 784. When an agency has not yet processed all records, it has not "responded" to the entire request, because it may still decide to assert exemptions for as-yet-unprocessed records. The point of an *Open America* stay is to allow more time to respond to the request in its entirety, not just part of it. Otherwise, an agency could simply produce one responsive document up front and then delay the release of other records for years.

Once in court, an agency "may further extend its response time [to a request] *if it demonstrates 'exceptional circumstances' to the court*." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) (emphasis added). The language of *Open America* jurisprudence broadly makes clear that agencies must either promptly comply with FOIA's requirements or *actively* seek a stay for "exceptional circumstances" to allow more response and/or processing time, which may only be granted as long as the agency is "exercising due diligence in responding to the request." 5 U.S.C. 552 § (a)(6)(C)(i). "Exceptional circumstances" specifically *excludes* "a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id*. § 552((a)(6)(C)(ii). This change was specifically made in 1996 to narrow the circumstances under which agencies could rely on *Open America* stays—and such a change is hardly consistent

4

with the notion that an agency does not have to actively justify its delay in response or processing if it is doing anything more than not responding *at all*.

Possible reasons for such a stay include that the agency is "deluged" with requests "vastly in excess of that anticipated by Congress," *Open Am.* at 616, or that the agency is making efforts to, *e.g.*, reduce the number of pending requests or the size or complexity of other requests. *See, e.g.*, *Elec. Privacy Info Ctr. v. FBI*, 933 F. Supp. 2d 42, 46 (D.D.C. 2013). But the agency has to affirmatively meet this burden in order to be given more time. *See, e.g., Clemente v. FBI*, 71 F. Supp. 3d 262, 266 (D.D.C. 2014) ("The FBI must make two showings before the court may grant a stay of proceedings: (1) that exceptional circumstances exist, and (2) that the agency is 'exercising due diligence' in processing [the] request."). All of these cases take for granted that an *Open America* stay is a conditional grant of more time contingent on the agency's affirmative showings. Otherwise, the plaintiff may be entitled to a judgment on the pleadings. *See, e.g.*, *Nat'l Sec. Archive v. SEC*, 770 F. Supp. 2d 6, 8-9 (D.D.C. 2011) (finding that plaintiff's allegation that defendants violated FOIA by failing to disclose responsive records within the statutory period was countered by the SEC's affirmative detailing of its exceptional circumstances and due diligence warranting an *Open America* stay).

A further, practical reason the burden is on the agency to move for and demonstrate eligibility for an *Open America* stay is that the plaintiff is in no position to know of, let alone demonstrate to the Court, whether the agency is actually exercising due diligence or is truly facing exceptional circumstances. For both judicial economy and basic fairness purposes, it is only logical that the agency must either produce the requested records quickly or explain why it cannot. This is effectively the same logic behind *Vaughn* indices, as *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), found that the Government could not simply assert broad and conclusive

exemptions, but instead had to defend the asserted exemptions in more detail because it was the only party that could do so absent a special master. Indeed, the *Vaughn* court noted that "[t]he procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure. Yet the current approach places the burden on the party seeking disclosure, in clear contravention of the statutory mandate." *Id.* at 828. In FOIA litigation, many burdens are on the Government for a reason. Here, it is consistent with the entire FOIA framework to require that an agency either actively justify its delays or be vulnerable to judgment on the pleadings.

For the foregoing reasons, MuckRock respectfully requests that the Court grant its Motion. If CIA is unwilling to meet the burden of requesting an *Open America* stay, the Court should presume that it cannot justify its implicit request for a fourteen-month stay of briefing and order CIA to process all responsive records within six months. In order to meet this requirement, CIA would need to process approximately ninety-two records/month—or approximately 550-775 pages/month—which is significantly less than rates ordered by other courts, *see*, *e.g.*, *Seavey v. DOJ*, 266 F. Supp. 3d 241, 248 (D.D.C. 2017) (describing the ordered rate of 2850 pages/month as "well within the range of what other courts have ordered").[3]

---

[3] Because the purpose of this Motion is simply to compel CIA to seek an *Open America* stay, MuckRock will not spend any more time attacking the processing rate in this context; that would defeat the purpose of the Motion. Simply put, this Motion is not the proper vehicle for a detailed argument about CIA's processing rate; a motion for an *Open America* stay, in which CIA provides evidence justifying its entitlement to such a stay, is.

Date:   December 6, 2021

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*