UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MUCKROCK, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CENTRAL INTELLIGENCE AGENCY, )<br>)<br>Defendant. ) | Civil Action No.<br>1:20--cv-02474  JMC |

**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO SEEK AN *OPEN AMERICA* STAY**

**INTRODUCTION**

Plaintiff MuckRock, LLC, seeks to challenge the processing schedule set forth by the parties – without any objection by Plaintiff − in a Joint Status Report filed February 5, 2021 (ECF No. 13) for two Freedom of Information Act ("FOIA") requests submitted to the Central Intelligence Agency ("CIA").  The FOIA requests sought copies of all CIA internal regulatory issuances and records contained in "regulations.cia," an internal CIA internet domain.  The CIA is processing these records pursuant to the agreed-upon schedule and has timely made six interim responses.  Although Plaintiff raised no objections to the schedule in the parties' February 5, 2021 Joint Status Report, now, more than ten months later, Plaintiff seeks to challenge that processing schedule.  Specifically, Plaintiff seeks an order requiring the CIA to either file a motion for an *Open America* stay justifying the processing schedule or produce all releasable portions of the responsive records within six months.  *See* ECF No. 19.

Plaintiff's motion should be denied.  First, *Open America* stays, when appropriate, are filed in the initial stages of a FOIA case where the request is still in the processing

1

queue due to a backlog of prior filed requests. It does not address cases where, as here, the FOIA requests have already risen to the top of the queue and are being processed. Second, Plaintiff's challenge to the processing schedule is untimely. If Plaintiff had objections to CIA's processing schedule, it had the opportunity to raise its objections at the outset in the parties' Joint Status Report. Indeed, Judge Jackson Brown, who was initially assigned this case, had a standing order requiring a party to raise any objections to an agency's processing in the parties' initial joint report. *See* ECF No. 9, ¶ 4(a). Finally, Plaintiff's belated objection to the CIA's processing schedule has no merit in any event. As explained in the Declaration of Vanna Blaine (Exhibit A) ("Blaine Decl."), the requests present complex issues and the CIA is exercising due diligence in responding to the request. Accordingly, the current processing rate is reasonable and should not be disturbed.

## BACKGROUND

In this action, Plaintiff sought to compel production of non-exempt records responsive to six FOIA requests. Compl., ECF No. 1. As explained in the most recent Joint Status Report, the two requests still being processed are those in Counts 1 (F-2020-01802) and 2 (F-2020-1999). ECF No. 18 ¶ 1. The request in Count 1 seeks "[a]ll Regulatory Issuances as that term is defined in AR 1-3." ECF No. 12 ¶ 1.[1] The request

---

[1] As noted in its Complaint, Plaintiff had previously filed a FOIA request (F-2014-00371) seeking copies of "all CIA regulatory issuances in the internal Agency-wide regulatory database." ECF No. 1, ¶ 9. That request was the subject of *MuckRock, LLC v. CIA,* No. 14-997 (D.D.C.). *Id.* ¶ 13. Before the parties had completed briefing on CIA's motion for summary judgment, MuckRock voluntarily dismissed that action noting that it had filed a new request for CIA's current internal regulations. *Id.* ¶ 13. In its 2020 request, Plaintiff stated that CIA "may exclude any records which were released in full in response to Req. F-2014-00371 and remain in effect unchanged."

in Count 2 seeks "[a]ll information in regulations.cia." *Id.* ¶ 2. Regulations.cia is an internal CIA internet domain. *Id.* It contains the following: (1) all current regulatory issuances; (2) messages indicating that (a) some regulatory issuances have been rescinded and (b) some regulatory numbers are reserved for future use; and (3) other general administrative information regarding regulatory issuances. *Id.*

In the parties' first Joint Status Report, the CIA explained that it expected to make its first interim production in response to these two requests on January 29, 2021, and at that time it would propose a production schedule. *See* ECF No. 12. On January 29, 2021, the CIA made its first interim response, producing 12 documents in full and 38 documents in part. *See* ECF No. 12, ¶ 1. On the same day, CIA's counsel sent Plaintiff's counsel a letter via email stating that the CIA "anticipates completing review and processing of approximately 75 documents every other month until production is complete, producing all non-exempt portions of such records." Letter from Marcia Sowles to Kel McClanahan dated Jan. 29, 2021 (Exhibit B). The CIA further stated that it planned to make such interim responses on the 29th of the month unless that date is a weekend or holiday, in which case, the CIA will make its response on the work day immediately preceding. *Id.*

Plaintiff raised no objections to CIA's proposed schedule. Accordingly, on February 5, 2021, the parties filed a Joint Status Report setting forth the processing schedule proposed by the CIA. *See* ECF No. 12 ¶ 1.

The CIA has consistently met that processing schedule, making interim responses on March 29, 2021; May 28, 2021; July 28, 2021; September 29, 2021; and November 29, 2021. *See* ECF Nos. 13-18. On April 2, 2021, in response to Plaintiff's request

regarding the number of records remaining to be processed, the CIA informed Plaintiff that there were approximately 850 documents. Exhibit C (email from Marcia Sowles to Kel McClanahan dated April 2, 2021). Starting with the June 7, 2021 Joint Status Report, at Plaintiff's request, the parties have included the approximate number of remaining documents in each joint status report. *See* ECF Nos. 14-18.

In none of the prior Joint Status Reports did Plaintiff raise any issue regarding the rate of production. Indeed, the first time that Plaintiff's counsel expressed any concern with the rate of production was in an October 6, 2021 email to the CIA's counsel. *See* ECF No. 19 at 2 n. 2 (Plaintiff's counsel stated that "if the CIA doesn't step up its production between now and December to something significantly more than 75 docs/2mos, I'm going to ask the judge to order them to justify an Open America stay to justify the delay"). Plaintiff's counsel, however, did not mention any complaints he had with the processing during the parties' consultation for the December 6, 2021 Joint Status Report, and did not include any statement on this issue in the Joint Status Report itself. Instead, Plaintiff's counsel waited until late in the afternoon after Defendant's counsel filed the Joint Status Report to send Defendant's counsel an email that he intended to file the instant motion, filing it a few hours later, before Defendant's counsel had an opportunity to consult with the CIA.

# ARGUMENT

**I.      An Open America Stay Is an Improper Procedural Vehicle to Set a Processing Schedule at this Stage in the Litigation**

Plaintiff's motion to require the CIA either to file a motion requesting an *Open America* stay or produce all releasable portions of responsive records within six months should be denied.  Plaintiff's motion is predicated on a misconception regarding the timing and reason for the government to file a motion for an *Open America* stay.  *Open America* stays are for cases where the request is still in the queue due to a backlog of other requests filed prior to plaintiff's request.  An *Open America* stay allows time for the request to rise to the top of the agency's processing queue so that the agency can begin to process it without taking the request out of order and disadvantaging other requesters.  *See Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C. Cir. 1976).  For example, in *Open America,* the FBI had explained that it had been deluged with an extraordinary volume of requests and limited resources, and as a result had a backlog.  The D.C. Circuit ruled that the "due diligence" requirement in the FOIA may be satisfied by an agency's good faith processing of all requests on a "first-in/first-out" basis, and that a requester's right to have his request processed out of turn required a particularized showing on "exceptional need or urgency."  *Id.* at 616.  Similarly, in *National Security Archive v. S.E.C.,* 770 F. Supp. 2d 6, 8 (D.D.C. 2011), the court granted the government's *Open America* motion where the SEC had "18 requests and approximately 1,094 boxes to review *before* plaintiff's requests reaches the front of the 'first-in/first-out' queue."  *Accord Edmond v. U.S. Attorney,* 959 F. Supp.2d 1, 2 (D.D.C.

1997) (*Open America* motion granted where there were 31 requests ahead of plaintiff's request in the queue).[2]

Here, Plaintiff's request is being processed pursuant to a processing schedule set forth in the parties' Joint Status Report more than 10 months ago without any objection from Plaintiff. Moreover, the CIA has consistently and timely made interim responses pursuant to that schedule. *See* ECF Nos. 13-19. If Plaintiff had an objection to the processing schedule, it could have raised it earlier. Indeed, Judge Brown Jackson, who had been initially assigned the case, had a procedure for resolving disputes if the parties could not agree about a proposed processing schedule. *See* General Order and Guidelines Applicable to FOIA Cases Assigned to Judge Ketanja Brown Jackson, ECF No. 9, ¶ 4(a). That procedure requires the parties to file "a joint proposed schedule for disclosure which shall include (1) each parties' proposed processing and disclosure schedule, and (2) the factual and legal basis for each parties' position regarding the timing of processing and disclosure." *Id.* If Plaintiff had an objection to the production schedule set forth by the CIA in January 2021, it had the opportunity to raise the objection by following these

---

[2] None of the cases cited by Plaintiff supports its claim that the government is required to file an *Open America* motion any time that the agency has failed to complete its processing within the statutory time period. *Citizens for Resp. & Ethics in Wash. v F.E.C.,* 711 F.3d 180 (D.C. Cir. 2013), did not involve an *Open America* motion or any claim as when such a motion was required. Instead, the issue "presented concern[ed] when a FOIA requester must exhaust administrative appeal before filing a suit." *Id.* at 184. Similarly, the issue in *Judicial Watch v. DHS,* 895 F.3d 770 (D.C. Cir. 2018), was whether plaintiff had stated a plausible claim that the Secret Service had a policy of prolonged and unexplained delays in disclosing requests for non-exempt records. In *Clemente v. FBI,* 71 F. Supp.3d 262 (D.D.C. 2014), plaintiff at the outset of case filed a motion asserting that she was entitled to expedited processing and release of all non-exempt records.

procedures and did not.  It should not now be rewarded for trying to avoid the court's procedures by petitioning to a newly appointed judge.³

## II.     The CIA's Processing Rate Is Reasonable Under the Circumstances

In any event, Plaintiff's belated objection to the CIA's processing schedule has no merit.  Although a FOIA requester "shall be deemed to have exhausted his administrative remedies" once the initial twenty days has passed without an agency determination on the request, and thus may proceed to district court, documents need not be produced within the twenty working days.  *See Citizens for Responsibility & Ethics in Washington v. Federal Election Comm.,* 711 F.3d 180, 190 (D.C. Cir. 2013).  While the CIA was required to make a "determination" with respect to the request, it has done so by notifying the requester and the court that it intends to produce the non-exempt portions of the requested records.  Plaintiff now complains about the processing schedule entered by the Court.  But given the complexity of the request, the sensitive and in many cases classified nature of the records, and the degree of coordination among the various components of the CIA and the levels of review required, the current schedule is reasonable and appropriate.

As explained in the attached declaration, the requests at issue here are complex, and the CIA is exercising due diligence in responding to the request.  The CIA's review

---

³ Plaintiff has not offered any basis for its delay in challenging the processing schedule.  Indeed, it has no excuse.  Plaintiff bases its request for an order requiring the CIA to process at a faster rate on the fact that if the CIA continues at the current rate, the CIA will not complete its processing until February 2023.  But that is not a new fact that Plaintiff's counsel recently discovered.  On April 2, 2021, in response to Plaintiff's request regarding the number of records remaining to be processed, the CIA informed Plaintiff's counsel that there were approximately 850 documents.  Moreover, since the June 7, 2021 Joint Status Report, the parties have included the approximate number of remaining documents in each Joint Status Report.  *See* ECF Nos. 15-19.

and production of the requested documents has been and will continue to be a significant undertaking in terms of both time and resources.  Blaine Decl. ¶ 6.  Not only do the documents often contain complex and classified, or otherwise sensitive, content, but the documents present unique problems because of their broad agency-wide scope and their interconnection with each other, making the processing unusually difficult and time-consuming.

By way of example, CIA regulatory issuances contain numerous cross-references to one another and to other Agency authorities.  *Id.*  In many instances, making a determination as to one document, or part of one document, requires the corresponding treatment of cross-referenced documents.  *Id.*  This necessitates an extra level of review not necessary in response to other FOIA requests to ensure a systematic and consistent approach is applied across all of the responsive documents.  *Id.*

Furthermore, the regulations touch upon all elements of the CIA from administration to operations.  *Id.* ¶ 7.  They are not limited to one particular department or office, or any one topic.  *Id.*  As a result, processing them requires a degree of internal coordination across and among CIA's offices and components that is not standard in response to other FOIA requests.  *Id.*  Each document that includes content that the CIA will potentially release for the first time necessitates several levels of review, including by the heads of appropriate divisions and departments and other senior Agency officers, as well as the Office of General Counsel.  *Id.*  The content of each particular document is evaluated and discussed until a line-by-line decision is reached on what can and cannot be released pursuant to FOIA.  *Id.*  Approval from all involved in the review process for a document is required before the CIA can complete the processing of that document.  *Id.*

Although not every responsive document requires this level of internal coordination, the process can take several months from start to finish for the ones that do. *Id.* ¶ 8. Knowing this, when the CIA proposed its schedule of 75 documents every two months, it did so by looking at the universe of responsive documents as a whole, and determining what would be a reasonable processing rate for them as a whole. *Id.* For the past year, the CIA has followed procedures by which it would ensure that it would be in a position to consistently process 75 documents every two months until it completed its production. *Id.* This process has necessitated that at any given time, the CIA has been working on documents that will be part of interim responses several months in the future. *Id.* At the moment, for instance, internal coordination has already begun for certain documents that will be processed in interim productions after the next scheduled one in January 2022. *Id.* Because the CIA has already commenced the internal coordination necessary for several remaining documents, changing CIA's approach now would not necessarily speed up the processing rate. *Id.*

Accordingly, the CIA's determination that it could reasonably process 75 responsive documents every two months is reasonable. The decision took into account the complex, and often classified, content of the responsive documents, as well as the internal coordination necessary to process certain documents. The CIA has worked with this rate and schedule for five interim productions, and the CIA is reasonably capable of maintaining this pace going forward until it completes its processing of all responsive documents. *Id.* ¶ 9.[4]

---

[4] If such information would be helpful to the Court, the CIA can provide additional details regarding the factors at issue in its processing of the documents.

## CONCLUSION

For the above stated reasons, this Court should deny Plaintiff's motion to compel the CIA to seek an *Open America* stay.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES
DC Bar No. 369455
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street N.W.  Room 11028
Washington, D.C.  20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

Attorneys for Defendant