**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MUCKROCK, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-2474 (JMC) |
| | ) | |
| **CENTRAL INTELLIGENCE AGENCY,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In addition to the CIA's public regulations, which appear at 32 C.F.R. § 1900.01 *et seq.*, the Agency publishes internal, non-public regulations and guidance documents. In July and August 2020, a reporter for Muckrock.com submitted six Freedom of Information Act requests for essentially all of these documents. Declaration of Mary C. Williams ¶¶ 8–9 ("Williams Decl"). The CIA located 1,017 responsive records, produced 502 of them in whole or in part, and withheld the remaining 515 records in full under FOIA Exemptions 1, 2, 3, 5, and 6. *Id.* ¶¶ 13–14. Muckrock now challenges the adequacy of the CIA's search in response to several of its FOIA requests, and the lawfulness of the Agency's withholding of the documents withheld in full.

For the reasons explained below, the CIA is entitled to summary judgment on the challenges presented here. The Agency conducted a broad search of its regulatory database and related files. It located "Agency regulations, guidance, notices, and standards" which "cover a . . . number of topics," including "the Agency's organization, functions, and authorities," "intelligence activities . . . and covert action," "security and counterintelligence," and "data management." Williams Decl. ¶ 20. When these records were non-exempt, in whole or in part, the CIA released them to Muckrock. But given the mission of the CIA and the nature of the records requested, it is unsurprising that many of them were withheld in full under one or more FOIA exemptions. Nearly half of the withheld records were classified; a large majority concerned "intelligence sources and methods" within the meaning of the National Security Act, 50 U.S.C. § 3024(h)(1); and almost all of them concerned "the organization or functions of the Agency" or other matters exempt from disclosure under the CIA Act, 50 U.S.C. § 3507. Because the CIA adequately searched for responsive records and properly withheld them when the records called for withholding, it is now entitled to summary judgment.

**LEGAL STANDARD**

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Dean v. DOJ*, 87 F. Supp. 3d 318, 320 (D.D.C. 2015) (citation omitted); *accord Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."). A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B).

**ARGUMENT**

Because the CIA conducted a reasonable search for all responsive records and its withholdings in full were justified under FOIA, the Agency is entitled to summary judgment on the challenges raised here.

**A.     The CIA conducted an adequate search for all responsive records.**

An agency is entitled to summary judgment with respect to adequacy of its search if it "demonstrate[s] that it made a 'good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested.'" *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). In short, "[a] search need not be perfect, only adequate, and adequacy is measured by the

reasonableness of the effort in light of the specific request." *DiBacco*, 795 F.3d at 194-95 (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Such affidavits are sufficient if they "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006)). This standard is not demanding. "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice . . . . " *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004) ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

Muckrock challenges the adequacy of the CIA's search for records responsive to three of its six FOIA requests. Two of those requests referred to Agency Regulation ("AR") 1-3, which describes the CIA's internal regulatory system, while the third referred to "ARGO," which is "an acronym for Agency Regulations and Governance, a repository containing official CIA corporate regulatory issuances." Williams Decl. at 4 n.1. The first request, which was given the number F-2020-1799, sought "'ARGO's procedures' as that term is used in AR 1-3, Sec. III(C)(5)."

Williams Decl., Ex. A.  The second request, number F-2020-1800, sought "[a]ll 'procedures to ensure effective implementation of regulatory issuances' pursuant to AR 1-3, Sec. III(C)(7) which were developed after 1/1/2014."   Williams Decl., Ex. C.  And the third, number F-2020-1802, sought "[a]ll Regulatory Issuances as that term is defined in AR 1-3," except for those released in their current forms in response to an earlier FOIA request.  Williams Decl., Ex. G.

The CIA conducted a reasonable search for the records responsive to these requests.  The Agency searched "for all current regulatory issuances contained in the Agency's internal regulatory database."   Williams Decl. ¶ 17.  Its searches "encompassed the Agency's active regulatory database (regulations.cia), which contains all current and rescinded regulatory issuances."  *Id.* ¶ 18.  This "database is the comprehensive repository for all Agency regulations, standards, and guidance documents, and is the system of record for regulatory issuances."  *Id.*  It therefore contains "[a]ll Regulatory Issuances as that term is defined in AR 1-3," which were the subject of request F-2020-1802.  Williams Decl., Ex. G.

The CIA's "searches also included files maintained by the [former] Office of the Chief Operating Officer (now the Office of the Executive Director) and the Directorate of Support," where the Agency searched "for regulatory procedures and related guidance."  Williams Decl. ¶ 18.  In particular, the Agency searched these files for "the procedures for the formal coordination and publication of regulatory issuances as defined by AR 1-3 that were in existence as of the date the search for this request began."  *Id.* ¶ 19.b.  This was a reasonable search for all records responsive to request F-2020-1799, which sought "'ARGO's procedures' as that term is used in AR 1-3, Sec. III(C)(5)."  Williams Decl., Ex. A.

The CIA did not conduct a separate search in response to F-2020-1800, which sought "[a]ll 'procedures to ensure effective implementation of regulatory issuances' pursuant to AR 1-3, Sec.

III(C)(7) which were developed after 1/1/2014."   Williams Decl., Ex. C.  The CIA determined that the procedures sought by this request were documents that it refers to as "Agency Guidance" documents.  "Under AR 1-3, Agency Guidance ('AG') documents are defined as '[d]ocuments that provide instruction, guidance, implementation procedures, or administrative or technical details associated with an Agency Regulation.'"   Williams Decl. ¶ 19.c.  The CIA therefore determined that its Agency Guidance documents "constitute the implementation procedures sought by . . . request" F-2020-1800, and that "all current AGs were captured in the searches for F-2020-1802 (all regulatory issuances)" and another request which sought "all records in regulations.cia." *Id.*; *see* Williams Decl., Ex. I.

Because these searches were reasonably calculated to locate all records responsive to Muckrock's FOIA requests, the CIA is entitled to summary judgment on the adequacy of its search.

**B.      The CIA properly withheld the records at issue here.**

FOIA represents a delicate balance "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  In drafting the statute, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information," and therefore "provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Although these exemptions are to be "narrowly construed," *id.* at 630 (citation omitted), courts must still give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit. . . ." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  "[S]ummary judgment is

warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quotation and citation omitted).  This is not a high bar: "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75 (citation omitted).

Under these standards, the CIA's declaration and accompanying *Vaughn* index, *see* Williams Decl., Ex. N, show that the Agency is entitled to summary judgment on the propriety of its withholdings under Exemptions 1, 2, 3, 5, and 6. [1]

> i.  **The CIA properly withheld classified information under Exemption 1.**

Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Executive Order 13,526, which currently governs the classification of national security information, establishes four prerequisites: (1) an original classification authority classifies the information; (2) the U.S. Government owns, produces, or controls the information; (3) the information is within one of eight protected categories listed in section 1.4 of the Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and identifies or describes that damage.  Exec. Order No. 13,526, § 1.1(a), 75 Fed. Reg. 707, 707 (Dec. 29, 2009).  The categories of information listed in section 1.4 include information that "pertains to

---

[1] When the CIA refers to a particular document, it will use the number given to that document in the *Vaughn* index.

. . . intelligence activities," "intelligence sources or methods," or "foreign relations or foreign activities of the United States." *Id.* § 1.4(c)–(d). Such information is "properly classified . . . in the interest of national security, and therefore fall[s] within Exemption 1." *Larson*, 565 F.3d at 864.

The CIA's declaration explains that the information withheld under Exemption 1 is properly classified under Executive Order 13,526.[2] Some of the information has been withheld because it "pertains to . . . intelligence activities." Exec. Order No. 13,526, § 1.4(c). These withholdings "include[] the policies, processes, and methods the CIA uses to collect and analyze intelligence regarding specific types of intelligence targets, including methods for obtaining and handling human intelligence sources." Williams Decl. ¶ 29. Some of "[t]he withheld information pertains to the U.S. government's clandestine activities." *Id.* (citing, *e.g.*, Documents 116, 157, and 450). And some of the withheld information "reflects . . . priorities of U.S. intelligence targets and analysis as well as internal Agency processes for handling intelligence information." *Id.* (citing, *e.g.*, Documents 15, 122, and 123). The documents from which this information has been withheld have titles such as "Agency Guidance on Intelligence Activities" or "Agency Regulation on Intelligence Activities." *Id.* And the CIA attests that "[d]isclosing the type of detail found in these records reasonably could be expected to damage national security because it would enable adversaries and intelligence targets to identify and evade CIA collection efforts, detect Agency operations and adjust behavior accordingly, and exploit vulnerabilities in CIA security

---

[2] Under Exemption 1, the CIA has withheld information from Documents 1–24, 74–75, 79, 81–82, 92, 94–116, 119–124, 126–127, 135, 138–150, 152–173, 176–180, 182–192, 194–197, 199–201, 203, 211, 219, 221, 224–227, 242–243, 245, 250, 258–259, 261–262, 267–269, 281, 296–302, 305–306, 308–316, 318, 325–327, 332, 338–339, 346–351, 353–354, 356–365, 367–373, 376–380, 382, 384–385, 387–388, 391–392, 394, 397–399, 401–402, 404–411, 417–418, 420–421, 427, 429, 433, 435, 437, 441, 445–446, 450, 453, 455, 457, 462–463, 465–466, 468, 474, 480–482, 491, 493, 499–500, 511–512, and 514–515.

procedures." *Id.* Because "[s]uch disclosure would directly impair the Agency's ability to collect intelligence critical to national security decision-making," *id.*, the challenged withholdings of information that pertains to intelligence activities were lawful.

The CIA also withheld information that "pertains to . . . intelligence . . . methods." Exec. Order No. 13,526, § 1.4(c). As its declaration explains, "the withheld information protects specific types of intelligence methods, as well as policies and processes for utilizing those intelligence methods and the information obtained therefrom." Williams Decl. ¶ 31. Some of the withheld information "discusses specific intelligence gathering methods, including technical collections systems and clandestine techniques." *Id.* (citing Documents, *e.g.*, 92, 338, and 371). And some of the withheld information "provides details about how the CIA conducts its operations," the disclosure of which "would impair the CIA's ability to continue to collect and analyze intelligence and conduct operations." *Id.* (citing, *e.g.*, Documents 14 and 154). Like the documents pertaining to intelligence activities, the documents pertaining to intelligence methods have titles such as "Agency Notice on Intelligence Activities" or "Agency Regulation on Intelligence Activities." *Id.* The CIA attests that "[i]ntelligence methods must be protected to prevent foreign adversaries, hostile actors, terrorist organizations, and others from learning the ways in which the CIA operates, which would allow them to take measure to hide their activities from the CIA or target Agency officers." *Id.* ¶ 30. Because "[p]rotecting this information is essential to maintaining the effectiveness of the Agency's intelligence collection and analysis efforts, and preventing compromise of sensitive U.S. intelligence priorities and processes," *id.* ¶ 31, the challenged withholdings of information that pertains to intelligence methods were lawful.

Finally, the CIA withheld information that "pertains to . . . foreign relations or foreign activities of the United States." Exec. Order No. 13,526, § 1.4(d). As its declaration explains,

"the withheld information concerns internal Agency policies, guidelines, and standards related to foreign services, foreign individuals, and/or clandestine assets and cooperative sources who aid the CIA in its intelligence gathering mission."  Williams Decl. ¶ 32 (citing, *e.g.*, Documents 20, 159, and 369).  "Revealing the manner in which the CIA maintains these relationships would not only expose U.S. intelligence priorities and capabilities to foreign adversaries, but also erode the trust that strengthens the CIA's relationships with foreign liaison partners," and thereby harm national security.  *Id.*    Because "[w]ithholding this information is essential to maintaining the integrity of these sensitive relationships and protecting U.S. national security interests," *id.*, the challenged withholdings of information that pertains to foreign relations or foreign activities were lawful.[3]

"Recognizing that national security is primarily the province of the Executive," courts in this Circuit "decline to micromanage agency determinations that [classified] information should remain secret." *Schaerr v. DOJ*, 69 F.4th 924, 929 (D.C. Cir. 2023); *see ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011) (explaining that "courts lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case").  Instead, courts "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record."  *Larson*, 565 F.3d at 864 (quotation omitted); *see Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("[W]e have consistently deferred to executive

---

[3] The CIA "bears the burden of showing that it 'reasonably foresees that disclosure would harm an interest protected by an exemption'" other than Exemption 3.  *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C. § 552(a)(8)(A)(i)).  For the reasons explained above, it has carried that burden as to the classified information withheld under Exemption 1.

affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review.").  To that end, courts "reviewing agency affidavits invoking [FOIA] Exemption One . . . simply consider whether the agency has plausibly asserted that the matters are in fact properly classified pursuant to an executive order."  *Schaerr*, 69 F.4th at 929; *see Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (explaining that "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified").

The CIA has done so here, for the reasons set forth above.  It is therefore entitled to summary judgment on the lawfulness of its Exemption 1 withholdings.

### ii.    The CIA properly withheld information under Exemption 3.

Exemption 3 incorporates into FOIA "the protections of other shield statutes," *ACLU*, 628 F.3d at 617–18, by excluding from its purview "'matters' that are 'specifically exempted from disclosure by statute' if the statute 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue' or 'establishes particular criteria for withholding or refers to particular types of matters to be withheld,'"  *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(3)).  "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Id.* at 197 (quoting *Morley*, 508 F.3d at 1126).

In this case, the CIA relied on the National Security Act of 1947, 50 U.S.C. § 3024(h)(1), and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, to withhold information under Exemption 3.  The former states that "[t]he Director of National Intelligence shall protect . . . intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(h)(1).  The

latter provides in relevant part that the CIA shall be exempt from disclosing "the organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. The D.C. Circuit has held that both statutes may be used to withhold information under Exemption 3. *DiBacco v. Dep't of Army*, 926 F.3d 827, 834–35 (D.C. Cir. 2019) (citing *DiBacco*, 795 F.3d at 183 (National Security Act); *Baker v. CIA*, 580 F.2d 664, 667 (D.C. Cir. 1978) (CIA Act)). And the material withheld by the CIA falls within the scope of these exempting statutes.

Disclosure of the information withheld under the National Security Act would reveal intelligence sources and methods.[4] Some of the withheld records would reveal "specific operational procedures used in intelligence collection." Williams Decl. ¶ 37 (citing, *e.g.*, Documents 4, 17, and 158). Others would reveal "security protocols and procedures that protect classified information and intelligence operations." *Id.* (citing Documents, *e.g.*, 178, 219, and 486). Still others would reveal "organizational structures that reflect intelligence priorities and operational focus." *Id.* (citing Documents, *e.g.*, 74, 81, and 223). Finally, disclosing other withheld records would reveal "internal policies whose disclosure would enable adversaries to understand or circumvent CIA intelligence activities." *Id.* (citing Documents, *e.g.*, 101 and 108).

The Supreme Court has recognized the "wide-ranging authority" provided by the National Security Act, entrusting the agency to "weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence gathering process." *See CIA v. Sims*, 471 U.S. 159, 180 (1985). Rather

---

[4] Under the National Security Act as incorporated by Exemption 3, the CIA has withheld information from all of the documents at issue here except Documents 27, 37–39, 41–46, 66, 129–134, 229–237, 240, 248–249, 253, 265, 272, 282, 287, 324, 329–331, 341–344, 386, 396, 423, 428, 430, 432, 434, 448, 451–452, 459–461, 464, 475–479, 484–486, 489, and 497.

than place any limit on the scope of the Act, "Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence." *Id.* at 169–70.  Because the release of the information withheld by the CIA under the National Security Act "could reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods," the CIA was entitled— indeed, required—to withhold it.  *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980)

Moreover, disclosure of the information withheld under the CIA Act[5] would reveal "the organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507.  As its declaration explains, the CIA has withheld "information related to the organization and functions of the CIA, information about CIA personnel, including their names, titles, and identification numbers, and operational and policy documents that could potentially reveal sensitive information about the Agency's activities." Williams Decl. ¶ 39 (citing, *e.g.*, Documents 73, 80, and 113).  All of this information is exempt from disclosure under the CIA Act, and therefore within the scope of Exemption 3.[6]

The CIA is therefore entitled to summary judgment on the lawfulness of its withholdings under Exemption 3.

---

[5] Under the CIA Act as incorporated by Exemption 3, the CIA has withheld information from all of the documents at issue here except Documents 39, 272, 282, 287, and 329–330.

[6] Because Exemption 3 applies to material "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), such "disclosure is prohibited by law" under 5 U.S.C. § 552(a)(8)(A)(i), and that provision therefore does not require an independent showing of foreseeable harm.  *Leopold*, 94 F.4th at 37.  Nonetheless, the CIA reasonably foresees that relevant harms would result from the release of the material it has withheld under Exemption 3.  Williams Decl. ¶¶ 37, 40.

### iii.   The CIA properly withheld information under Exemption 5.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  The exemption ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

Among the privileges protected by Exemption 5 is the deliberative process privilege, a privilege uniquely available to the government. *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).  The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' . . . by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (citations omitted).  "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151.

"To qualify for withholding under Exemption 5's executive privilege, information must be both 'predecisional' and 'deliberative.'"  *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992); *see also Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 874 (D.C. Cir. 2010); *Judicial Watch, Inc. v. FDA*,

449 F.3d 141, 151 (D.C. Cir. 2006).  A record "is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made," and it is "deliberative if it 'reflects the give-and-take of the consultative process.'" *Petroleum Info. Corp.*, 976 F.2d at 1434 (citations omitted).

"To establish that [a] document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)).  The privilege therefore applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The CIA has withheld two categories of material under the deliberative process privilege as incorporated by Exemption 5.[7]  First, the CIA has "withheld draft policy documents or portions thereof" that have "not been finalized or adopted by the Agency," which "reflect preliminary thinking and policy options under consideration."  Williams Decl. ¶ 43 (citing, *e.g.*, Document 1). Such draft documents are plainly covered by the deliberative process privilege.  *See, e.g.*, *In re Apollo Group, Inc. Securities Litigation*, 251 F.R.D. 12, 31 (D.D.C. 2008); *People for the American Way Foundation v. National Park Service*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007); *Judicial Watch v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995).

---

[7] Under Exemption 5, the CIA has withheld information from Documents 1, 27–72, 229–246, 248–249, 251–254, 260, 263, 265, 271–280, 282, 284–285, 287–290, 329–330, 386, 390, 395–396, 403, 405–06, and 422–424.

And second, the CIA has "withheld regulatory numbers marked as 'reserved' in the Agency's regulatory database." Williams Decl. ¶ 43 (citing, *e.g.*, Documents 27, 29, and 423). As the Agency's declaration explains, when it "anticipates the need for a regulation on a particular subject, it may reserve a regulation number as a placeholder while policy deliberations continue regarding whether to publish a regulation and, if so, what its contents should be." *Id.* "Disclosure of these reserved placeholders would reveal the subjects of ongoing policy deliberations and prematurely expose policy options under consideration." *Id.* Because "disclosure would undermine the Agency's deliberative process . . . and would diminish the frank exchange of ideas necessary for sound policy development," *id.*, the withheld regulatory numbers are exempt from disclosure.[8]

The CIA is therefore entitled to summary judgment on the lawfulness of its withholdings under Exemption 5.

### iv.    The CIA properly withheld information under Exemption 2.

Exemption 2 "protects from disclosure material that is 'related solely to the internal personnel rules and practices of an agency.'" *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011) (quoting 5 U.S.C. § 552(b)(2)). As the Supreme Court has explained, "[a]n agency's 'personnel rules and practices' are its rules and practices dealing with employee relations or human resources." *Id.* at 570. Under Exemption 2, the CIA withheld "policies related to employee health and medical support," an Agency handbook related to employees who have left the CIA, and "administrative rules related to employees' personal motor vehicles." Williams Decl. ¶ 34 (citing,

---

[8] For similar reasons, the CIA reasonably foresees that the disclosure of this information would harm an interest protected by Exemption 5.

*e.g.*, Documents 97, 124, and 315).[9]  Because these documents are "related solely to the internal personnel rules and practices" of the CIA, they are exempt from disclosure.

The CIA is therefore entitled to summary judgment on the lawfulness of its withholdings under Exemption 2.

### v.    The CIA properly withheld information under Exemption 6.

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6).  The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6.  In *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989), the Court rejected a "cramped notion of personal privacy" under FOIA and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person."  More specifically, the Court noted that "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what extent information about them is communicated to others."  *Id.* at 764 n.16 (citation omitted).  Privacy is of particular importance in the FOIA context because a disclosure required by the FOIA is a disclosure to the public at large.  *See Painting & Drywall Work Preservation Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure.  *See Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  The agency must determine whether disclosure of the information threatens a protectable privacy

---

[9] Under Exemption 2, the CIA has withheld information from Documents 97, 124, 129–137, 139, 144–145, 298, 306, 309, 311, 313, 315, 324, 331–332, 339, 341–345, 418, and 463.

interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant public interest to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding *of the operations or activities of the government*." *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (emphasis as in *Fed. Labor Relations Auth.*; internal citation and quotation marks omitted). Plaintiff bears the burden of demonstrating that the release would serve this interest. *See Carter v. Dep't of Commerce*, 830 F.2d 388, 391–92 nn. 8 & 13 (D.C. Cir. 1987).

Under Exemption 6, the CIA has withheld "sensitive personally identifying information about CIA employees, including full names, contact information (phone numbers, email addresses, office locations), job titles, and employee identification numbers." Williams Decl. ¶ 45. This information appears because "these individuals are identified as points of contact for procedural questions" or as the individuals "responsible for a particular policy." *Id.* Because these individuals have significant privacy interests at stake and there is no countervailing public interest, this information was properly withheld under Exemption 6. *Id.* ¶¶ 45–46.[10]

The CIA is therefore entitled to summary judgment on the lawfulness of its withholdings under Exemption 6.

### vi.    All reasonably segregable non-exempt information has been released.

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d

---

[10] Under Exemption 6, the CIA has withheld information from Document 388.

242, 260 (D.C. Cir. 1977). An agency has no obligation to segregate non-exempt material that is so "inextricably intertwined" with exempt material that "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981), *abrogated on other grounds by Church of Scientology of Calif. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986); *see also Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (same). A court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citation omitted). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The CIA affirms that it conducted a detailed, line-by-line review of the responsive records and released all reasonably segregable nonexempt information. Williams Decl. ¶¶ 47–48. It has therefore complied with its statutory obligations.

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment to the CIA on the adequacy of its challenged searches and the lawfulness of its challenged withholdings.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ James Bickford*
JAMES BICKFORD

Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: June 22, 2026