**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MUCKROCK, LLC,<br><br>          Plaintiff,<br><br>    v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>          Defendant. | Case No. 20-cv-2474(JMC) |

**DECLARATION OF MARY C. WILLIAMS,
LITIGATION & INVESTIGATIONS INFORMATION REVIEW OFFICER FOR THE
INFORMATION REVIEW AND RELEASE DIVISION,
CENTRAL INTELLIGENCE AGENCY**

I, MARY C. WILLIAMS, hereby declare and state:

## I.    INTRODUCTION

### A.    My Professional Background

1.    I currently serve as the Litigation & Investigations Information Review Officer ("LI/IRO") for the Information Review and Release Division at the Central Intelligence Agency ("CIA" or "Agency"), a position I have held since November 2023. As the LI/IRO, I am responsible for ensuring that any determinations as to the release or withholding of documents or information under my purview are proper and do not jeopardize the national security of the United States. I am also responsible for, among other things, the classification review of CIA documents and information subject to proceedings pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

-1-

2.    I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526. This means I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

3.    Prior to serving as the LI/IRO, I served as the Acting Information Review Officer ("IRO") for the Litigation Information Review Office for four months, performing the same duties I presently perform as the LI/IRO. Prior to that, I served as the Criminal and Civil Team ("CCT") Lead in the Litigation Information Review Office for 45 months, where I was responsible for, among other things, reviewing CIA information that is subject to Classification Information Procedures Act ("CIPA"), 18 U.S.C. App. 3, in connection with criminal proceedings. As CCT Lead, I was responsible for ensuring that any determinations to release Agency information were proper and did not jeopardize national security. Prior to becoming the CCT Lead, I served as an Associate IRO for 19 months. In that role, I was responsible for conducting second-line reviews of Agency-wide information subject to pending litigation, and making classification and release determinations regarding such information when necessary. Prior to that, I served as a

Security Specialist with the U.S. Department of Justice for over 15 years.

4.    Through the exercise of my official duties, I have become familiar with this civil action and Plaintiff's underlying FOIA requests. I make the following statements based upon my personal knowledge and information made available to me in my official capacity as the LI/IRO.

**B.    Purpose of Declaration**

5.    I submit this declaration in support of the Government's Motion for Summary Judgment in this proceeding.

6.    The purpose of this declaration and accompanying Vaughn Index is to provide the Court with a description of the documents at issue in this case and justify, to the extent possible on the public record, the reasonableness of CIA's searches and the Agency's invocation of FOIA exemptions (b)(1), (b)(2), (b)(3), (b)(5), and/or (b)(6).

7.    For the Court's convenience, the remainder of this declaration is divided into three parts: Part II provides the procedural and administrative history of the case, including a description of Plaintiff's FOIA requests; Part III describes the searches CIA conducted for responsive records; and Part IV discusses the basis for the exemptions applied to the documents that CIA withheld in part and in full.

## II.  PLAINTIFF'S FOIA REQUESTS

8.    On 14 July 2020, Plaintiff submitted four distinct FOIA requests to the Agency concerning its internal regulations. The CIA acknowledged receipt of Plaintiff's FOIA requests on 17 July 2020 via four separate response letters.

a.    F-2020-01799: This FOIA request was for "'ARGO's procedures' as that term is used in AR 1-3, Sec. III(C)(5)."[1] The Agency assigned this FOIA request FOIA number F-2020-01799. A true and correct copy of this request is attached to this declaration as **Exhibit A** and the Agency's response is attached as **Exhibit B.**

b.    F-2020-01800: This FOIA request was for "[a]ll 'procedures to ensure effective implementation of regulatory issuances' pursuant to AR 1-3, Sec. III(C)(7) which were developed after 1/1/2014." The Agency assigned this FOIA request FOIA number F-2020-01800. A true and correct copy of this request is attached to this declaration as **Exhibit C** and the Agency's response is attached as **Exhibit D.**

c.    F-2020-01801: This FOIA request was for "[t]he '12/04/2009 Handbook' listed in the top right corner of the first page of CADRE[2] documents C05584446 and C05584449, as well as any document which superseded it." The Agency assigned this FOIA request FOIA number F-2020-01801. A true and correct copy of this request is attached to this declaration as **Exhibit E** and the Agency's response is attached as **Exhibit F.**

d.    F-2020-01802: This FOIA request was for "[a]ll Regulatory Issuances as that term is defined in AR 1-3. You may exclude any records which were released in full in response to Req. No. F-2014-00371 and remain in effect unchanged." The Agency assigned this FOIA

---

[1] "ARGO" is an acronym for Agency Regulations and Governance, a repository containing official CIA corporate regulatory issuances.

[2] "CADRE" is an acronym for the CIA Automated Declassification Release Environment, an electronic database containing versions of all Agency records that have been reviewed and/or compiled for potential public release.

request FOIA number F-2020-01802. A true and correct copy of this request is attached to this declaration as **Exhibit G** and the Agency's response is attached as **Exhibit H.**

9.  On 6 August 2020, Plaintiff submitted two additional separate FOIA requests related to internal Agency regulations. The CIA acknowledged receipt of these requests on 10 August 2020 via two separate response letters.

   a.  F-2020-01999: This FOIA request was for "[a]ll information in regulations.cia." The Agency assigned this FOIA request FOIA number F-2020-01999. A true and correct copy of this request is attached to this declaration as **Exhibit I** and the Agency's response is attached as **Exhibit J.**

   b.  F-2020-01998: This FOIA request was for "CADRE documents C05584446 and C05584449 are 'Procedures' from an unknown system. We request all similar 'Procedures' or related guidance documents from that system or, if that system is no longer in use, any system which currently performs the same function." The Agency assigned this FOIA request FOIA number F-2020-01998. A true and correct copy of this request is attached to this declaration as **Exhibit K** and the Agency's response is attached as **Exhibit L.**

10.  On 4 September 2020, Plaintiff initiated the above captioned lawsuit to produce the requested records.

11.  The CIA filed its Answer on 19 October 2020.

12.  Between 29 January 2021 and 25 May 2023, the CIA issued seventeen response letters, collectively releasing records responsive to Plaintiff's requests. Copies of these response letters are attached as **Exhibit M.**

13.    In total, the Agency identified 1,017 responsive records, resulting in the release of 302 records in full and 200 records in part[3] and the withholding in full of 515 records.

14.    The 515 records withheld in full were based on FOIA exemptions (b)(1), (b)(2), (b)(3), (b)(5), and (b)(6).[4] A Vaughn Index identifying these withholdings is attached as **Exhibit N.**[5] The Vaughn Index provides a description of the referenced documents and information as well as an explanation of the reasons the CIA withheld documents and information in this case.

15.    I understand that Plaintiff is challenging 3 of the Agency's 6 searches as well as the withholding in full of 515 of the 1,017 responsive records.

---

[3] The 25 May 2023 final response letter noted that it was a final response to five of Plaintiff's requests – F-2020-01799, F-2020-01801, F-2020-01802, F-2020-01998, F-2020-01999 – and that a final response to F-2020-01800 would be provided at a later date. The CIA later stated that no additional responsive documents to F-2020-01800 existed that had not already been processed. See ECF No. § 552 (9 Sept. 2024 Joint Status Report).

[4] The 29 September 2022 interim response letter states that 75 documents were reviewed and 58 of them were denied in full. The Agency's records for this production provide that 74 documents were reviewed and 57 of them were denied in full. Thus, the response letter inadvertently overstated the total records reviewed and the total records denied in full by one record each. Also, the 29 November 2022 interim response letter states 16 documents were released in part. The Agency's records for this production provide that one of the documents identified as released in part was actually released in full. Thus, the response letter inadvertently overstated the total records released in part by one record.

[5] The Vaughn Index attached as Exhibit N describes the withheld classified information to the maximum extent possible on the public record.

## III. CIA'S SEARCH FOR RECORDS

16. The CIA conducted thorough and diligent searches of relevant systems of records, to include electronic, hard copy, and archived Agency records. The CIA employees who performed these searches have access to pertinent records, are knowledgeable about the Agency's records systems, are qualified to search those records, and regularly search those records in the course of their professional duties.

17. The CIA's searches were reasonably calculated to find documents responsive to Plaintiff's requests. CIA data management professionals conducted a search for all current regulatory issuances contained in the Agency's internal regulatory database.

18. The searches encompassed the Agency's active regulatory database (regulations.cia), which contains all current and rescinded regulatory issuances. The searches also included files maintained by the Office of the Chief Operating Officer (now the Office of the Executive Director) and the Directorate of Support for regulatory procedures and related guidance. The Agency's regulatory database is the comprehensive repository for all Agency regulations, standards, and guidance documents, and is the system of record for regulatory issuances. Accordingly, searches of this system and related procedural

-7-

files were reasonably calculated to locate all responsive records to Plaintiff's FOIA requests.

19. Searches were conducted using reasonably described terms and timeframes from Plaintiff's requests, as set out in more detail below.

a. F-2020-01998: A search was conducted by the Agency's Directorate of Support for any "Procedures" and related-guidance documents discussed in two CADRE documents, C05584446 and C05584449. These CADRE documents were previously released under a separate FOIA request and were reviewed by this directorate.

b. F-2020-01799: A search was conducted for records maintained by the Office of the Chief Operating Officer (now the Office of the Executive Director) setting forth the procedures for the formal coordination and publication of regulatory issuances as defined by AR 1-3 that were in existence as of the date the search for this request began, 6 January 2021.

c. F-2020-01800: Plaintiff requested all "procedures to ensure effective implementation of regulatory issuances" pursuant to AR 1-3, section III(C)(7) and developed after 1 January 2014. Under AR 1-3, Agency Guidance ("AG") documents are defined as "[d]ocuments that provide instruction, guidance, implementation procedures, or administrative or technical details associated with an Agency Regulation." Because AGs constitute the implementation procedures sought by this request, and because all current AGs were captured in the searches for F-2020-01802 (all regulatory issuances) and F-2020-01999 (all records in regulations.cia), the Agency determined that a separate search for F-2020-01800 would be duplicative and that all responsive records were already identified through the other searches.

d. F-2020-01801: The Agency's Directorate of Support searched for the term "12/04/2009 Handbook" (with variations). This directorate had previously reviewed the two CADRE documents identified in this request —

C05584446 and C05584449 — that were released under a separate FOIA request.

20.   As noted above, the CIA identified 1,017 documents as responsive to these searches. As further described in the Vaughn Index, the responsive documents consist of Agency regulations, guidance, notices, and standards that are required by law or otherwise necessary to implement the authorities of the CIA Director, are essential to the health or safety of Agency resources, or are essential for standardization of Agency activities. These documents cover a broad number of topics, including the Agency's organization, functions, and authorities; workforce/human resources, including pay, benefits, and recruitment, as well as duties and responsibilities of certain staff; intelligence activities, such as the law and policy governing intelligence activities, and covert action; security and counterintelligence; safeguarding information; and data management.

21.   The Agency conducted a page-by-page, line-by-line review of each document to determine the releasability of information. Following that review, the CIA released 302 documents in full, 200 documents in part, and withheld 515 documents in full.

## IV.  FOIA EXEMPTIONS APPLICABLE TO THE CIA RECORDS

22.  The CIA withheld the information at issue in this case pursuant to FOIA exemptions (b)(1), (b)(2), (b)(3), (b)(5), and (b)(6). Each is described below.

### A.    FOIA Exemption (b)(1)

23.  FOIA exemption (b)(1) provides that the FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the information withheld pursuant to exemption (b)(1) satisfies the procedural and substantive requirements of Executive Order 13526, which governs classification, declassification, and safeguarding of national security information. See E.O. 13526 § 1.1(a), § 1.4.

24.  Section 1.1(a) of Executive Order 13526 provides that information may be originally classified only if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of Executive Order 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information

-10-

reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage.

25.  As an original classification authority, I have determined that the information in the responsive documents withheld pursuant to exemption (b)(1) is currently and properly classified, and that the information is owned and controlled by the U.S. Government. As described further below, the information falls under classification categories identified in sections 1.4(c) and 1.4(d) of Executive Order 13526 because it concerns "intelligence activities (including covert action), [or] intelligence sources or methods" and "foreign relations or foreign activities of the United States." Unauthorized disclosure of this information could reasonably be expected to result in damage to national security. Further, the responsive documents at issue contain classified information that is properly marked pursuant to section 1.6 of the Executive Order.

26.  Finally, in accordance with Executive Order section 1.7(a), none of the information at issue has been classified in order to conceal violations of law, inefficiency or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. Rather, the

information has been classified solely because its disclosure would harm national security.

27. Here, the withheld information falls into three categories: (1) intelligence activities; (2) intelligence methods; and (3) foreign relations or foreign activities of the United States. Each category is addressed below.

### i.    Intelligence Activities

28. Intelligence activities refer to the CIA's targets and operations, including the clandestine activities undertaken by the CIA to collect intelligence and the means by which it does so. The National Security Act of 1947, as amended, charges the CIA with collecting and analyzing intelligence. While the CIA's general intelligence mission is publicly known, the Agency does not disclose the specific targets of intelligence collection activities or the details of operations it conducts or supports. Such disclosure would allow intelligence targets to circumvent the CIA's collection efforts, damaging the Agency's ability to carry out its intelligence mission.

29. Here, the withheld information includes the policies, processes, and methods the CIA uses to collect and analyze intelligence regarding specific types of intelligence targets, including methods for obtaining and handling human intelligence sources. The withheld information pertains to the U.S. government's clandestine activities, such as operational

strategies, liaison relationships with foreign entities, and specific types of intelligence activities (e.g., Vaughn Index No. 116 [AG 2-55A, Agency Guidance on Intelligence Activities]; No. 157 [AR 2-10, Agency Regulation on Intelligence Activities]; No. 450 [AR 2-2, Agency Regulation on Intelligence Activities]). This information also reflects certain priorities of U.S. intelligence targets and analysis as well as internal Agency processes for handling intelligence information (e.g., Vaughn Index No. 15 [AR 2-7, Agency Regulation on Intelligence Activities]; No. 122 [AG 2-57E, Agency Guidance on Intelligence Activities]; No. 123 [AR 2-58, Agency Regulation on Intelligence Activities]). Disclosing the type of detail found in these records reasonably could be expected to damage national security because it would enable adversaries and intelligence targets to identify and evade CIA collection efforts, detect Agency operations and adjust behavior accordingly, and exploit vulnerabilities in CIA security procedures. Such disclosure would directly impair the Agency's ability to collect intelligence critical to national security decision-making.

### ii.  Intelligence Methods

30.  Intelligence methods are the means by which an intelligence agency accomplishes its objectives. Intelligence methods must be protected to prevent foreign adversaries, hostile actors, terrorist organizations, and others from

learning the ways in which the CIA operates, which would allow them to take measures to hide their activities from the CIA or target Agency officers. The more information the CIA discloses about its tradecraft, the more difficult it becomes for the CIA to actually collect and analyze foreign intelligence from around the world. Intelligence collection methods are valuable from an intelligence-gathering perspective only so long as they remain unknown and unsuspected. Once the nature of an intelligence method or the fact of its use in a certain situation is discovered, its usefulness in that situation and the CIA's ability to apply that method in other situations is significantly degraded or terminated.

31.    Here, the withheld information protects specific types of intelligence methods, as well as policies and processes for utilizing those intelligence methods and the information obtained therefrom. Specifically, the withheld information discusses specific intelligence gathering methods, including technical collections systems and clandestine techniques (e.g., Vaughn Index No. 92 [AR 2-9, Agency Regulation on Intelligence Activities]; No. 338 [AR 2-32, Agency Regulation on Intelligence Activities]; No. 371 [AR 11-6, Agency Regulation on Information Safeguarding ]). It also provides details about how the CIA conducts its operations, which would further reveal intelligence methods. Disclosure of these details would impair the CIA's

ability to continue to collect and analyze intelligence and conduct operations (e.g., Vaughn Index No. 14 [AN 2-3-2, Agency Notice on Intelligence Activities]; No. 154 [AR 2-5, Agency Regulation on Intelligence Activities]). Protecting this information is essential to maintaining the effectiveness of the Agency's intelligence collection and analysis efforts, and preventing compromise of sensitive U.S. intelligence priorities and processes.

### iii.   Foreign Relations or Foreign Activities

32.   The CIA also protects the nature and details of classified relationships to protect specific intelligence sources, methods, and activities used operationally, which includes the identities of individuals and foreign partners who assist the Agency. Here, the withheld information concerns internal Agency policies, guidelines, and standards related to foreign services, foreign individuals, and/or clandestine assets and cooperative sources who aid the CIA in its intelligence gathering mission (e.g., Vaughn Index No. 20 [AG 2-29A, Agency Guidance on Intelligence Activities]; No. 159 [AR 2-29, Agency Regulation on Intelligence Activities]; No. 369 [AG 9-44B, Agency Guidance on Information Technology]). These details have been withheld because their disclosure would reveal intelligence priorities and the manner in which the CIA shares information with foreign governments and individuals. Disclosure of this

information, categorized under Executive Order 13526 as information pertaining to the "foreign relations or foreign activities of the United States," reasonably could be expected to harm national security. Revealing the manner in which the CIA maintains these relationships would not only expose U.S. intelligence priorities and capabilities to foreign adversaries, but also erode the trust that strengthens the CIA's relationships with foreign liaison partners. This, in turn, could lead to a reduction or termination of cooperation, compromising the CIA's access to critical information and potentially damaging broader U.S. diplomatic relations. Withholding this information is essential to maintaining the integrity of these sensitive relationships and protecting U.S. national security interests.

**B.    FOIA Exemption (b)(2)**

33.    FOIA exemption (b)(2) exempts from disclosure materials "related solely to the internal personnel rules or practices of an agency." 5 U.S.C. § 552(b)(2). The CIA determined that a limited amount of information in the documents at issue here is exempt from disclosure pursuant to exemption (b)(2) because the information pertains solely to internal Agency personnel rules.

34.    The documents withheld based on exemption (b)(2) contain CIA internal personnel rules and practices, including

policies related to employee health and medical support; an Agency handbook related to employees following their separation from the Agency, and administrative rules related to employees' personal motor vehicles (e.g., <u>Vaughn</u> Index No. 97 [AR 2-26, Agency Regulation on Intelligence Activities]; No. 124 [AG 3-2A, Agency Guidance on Workforce/Human Resource]; No. 315 [AR 14-27, Agency Regulation on Travel]). This information falls within exemption (b)(2) because it relates solely to internal personnel rules and practices, contains no information of genuine public interest, and addresses purely administrative matters regarding CIA personnel affairs. The disclosure of these routine personnel matters would not shed light on the Agency's performance of its statutory duties or governmental operations.

**C.    FOIA Exemption (b)(3)**

35.    FOIA exemption (b)(3) allows for the withholding of information that is:

> specifically exempted from disclosure by statute (other than section 552b of this title), if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . .

5 U.S.C. § 552(b)(3). Two such statutes apply here: (1) section 102A(h)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(h)(1) (the "National Security Act");

and (2) section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 ("the CIA Act").

36.    The National Security Act provides that the Director of National Intelligence ("DNI"), "shall protect, and shall establish and enforce policies to protect, intelligence sources and methods from unauthorized disclosure." Accordingly, it is well-established that the National Security Act constitutes a federal statute that "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552 (b)(3). In accordance with DNI policies for the protection of intelligence sources and methods issued pursuant to section 102A(h)(1) and consistent with section 1.6(d) of Executive Order 12333,[6] the CIA is required to protect CIA intelligence sources, methods, and activities from unauthorized disclosure.

37.    The CIA invoked the National Security Act to protect information within the responsive records that would reveal intelligence sources and methods, including: specific operational procedures used in intelligence collection (e.g., Vaughn Index No. 4 [AR 2-38, Agency Regulation on Intelligence Activities]; No. 17 [AR 2-17, Agency Regulation on Intelligence

---

[6] Section 1.6{d) of Executive Order 12333, as amended by Order 13470 (July 30, 2008) requires the Director of the Central Intelligence Agency to "[p]rotect intelligence and intelligence sources, methods, and activities from unauthorized disclosure . . . ."

Activities]; No. 158 [AR 2-11, Agency Regulation on Intelligence Activities]); security protocols and procedures that protect classified information and intelligence operations (e.g., Vaughn Index No. 486 [AR 4-16, Agency Regulation on Conduct, Accountability, Discipline]; No. 178 [AR 7-9, Agency Regulation on Security and Counterintelligence]; No. 219 [AR 9-21, Agency Regulation on Information Technology]; organizational structures that reflect intelligence priorities and operational focus (e.g., Vaughn Index No. 74 [AR 1-5, Agency Regulation on Organization and Authorities]; No. 81 [AR 1-13, Agency Regulation on Organization and Authorities]; No. 223 [AG 1-2A, Agency Guidance on Organization and Authorities]); and internal policies whose disclosure would enable adversaries to understand or circumvent CIA intelligence activities (e.g., Vaughn Index No. 101 [AG 2-36C, Agency Guidance on Intelligence Activities]; No. 118 [AR 2-57, Agency Regulation on Intelligence Activities]). This information is precisely the type the National Security Act mandates be protected from unauthorized disclosure.

38. Further, section 6 of the CIA Act provides that the CIA shall be exempted from the provisions of any law which requires the publication or disclosure of the "organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency." The

-19-

CIA Act therefore constitutes a federal statute which "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Section 6 prohibits the disclosure not only of information identifying CIA personnel (i.e. names, official titles, salaries, contact information and numbers of personnel employed), but also the CIA's organizational and functional information.

39. In this case, pursuant to section 6 of the CIA Act, the CIA withheld the following types of information from certain records responsive to Plaintiff's FOIA requests, including information related to the organization and functions of the CIA, information about CIA personnel, including their names, titles, and identification numbers, and operational and policy documents that could potentially reveal sensitive information about the Agency's activities (e.g., Vaughn Index No. 73 [AR 1-4, Agency Regulation on Organization and Activities]; No. 80 [AG 1-10F, Agency Guidance on Organization and Activities]; No. 113 [AG 2-38A, Agency Guidance on Intelligence Activities]). The redacted information clearly falls within the scope of the statute because its disclosure would reveal the organization and substructure of the CIA and its personnel.

40. Although some of the information withheld may appear innocuous when viewed in isolation, if the CIA were routinely

-20-

required to make this information available in response to FOIA requests, a clear picture of how the Agency operates would emerge. Disclosure of this information in the aggregate would provide a roadmap to CIA's organizational structure and expose critical details of the Agency's protected functions, which is the type of information the statute is designed to protect.

**D.    FOIA Exemption (b)(5)**

41.    FOIA exemption (b)(5) provides that the FOIA's disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates civil discovery privileges, including the deliberative process privilege. As described in the CIA's Vaughn Index, the Agency invoked the deliberative process privilege to protect pre-decisional, deliberative materials.

42.    The deliberative process privilege protects the quality of the Agency's decision-making by permitting open and frank discussions between subordinates and superiors, protecting against premature disclosure of proposed policies before they are adopted, and protecting against the public confusion that might result from disclosure of reasons and rationale that were not in fact the basis for the Agency's actions. The information withheld by the CIA under this privilege is comprised of

recommendations, opinions of individuals, or advisory opinions of Agency personnel on matters preceding or not involving final Agency action. The Agency did not withhold segregable factual information that does not reveal its deliberative process.

43.  In this case, the CIA applied exemption (b)(5) to two categories of pre-decisional materials. First, the Agency withheld draft policy documents or portions thereof that had not been finalized or adopted by the Agency. These drafts reflect preliminary thinking and policy options under consideration, which is precisely what the deliberative process privilege protects (e.g., Vaughn Index No. 1 [Draft Corporate Policy Staff Glossary of Terms & Definitions]). Second, the Agency withheld regulatory numbers marked as "reserved" in the Agency's regulatory database (e.g., Vaughn Index No. 27 [AG 1-9C, Agency Guidance on Organization and Authorities]; No. 29 [AG 1-13D, Agency Guidance on Organization and Authorities]; No. 423 [AR 9-40, Agency Guidance on Information Technology]). When the Agency anticipates the need for a regulation on a particular subject, it may reserve a regulation number as a placeholder while policy deliberations continue regarding whether to publish a regulation, and if so, what its content should be. Disclosure of these reserved placeholders would reveal the subjects of ongoing policy deliberations and prematurely expose policy options under consideration. Such disclosure would undermine the Agency's

deliberative process by subjecting preliminary policy deliberations to premature public scrutiny and would diminish the frank exchange of ideas necessary for sound policy development.

**E.    FOIA Exemption (b)(6)**

44.    FOIA exemption (b)(6) protects from disclosure "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Courts have broadly construed the term "similar files" to cover any personally identifying information. In applying exemption 6, an agency is required to balance the relevant privacy interests of the individuals against the public interest in disclosure. In order to withhold information pursuant to exemption 6, an agency must determine that the disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The public interest in the FOIA context is defined as information that would "shed[] light on the performance of [an Agency's] statutory duties."

45.    Here, the withheld information is sensitive personally identifying information about CIA employees, including full names, contact information (phone numbers, email addresses, office locations), job titles, and employee identification numbers. This information is included in the documents as these

individuals are identified as points of contact for procedural questions, document drafters, or policy owners responsible for a particular policy. These individuals maintain substantial privacy interests. In contrast, disclosure of this information would not serve a legitimate public interest. Revealing the identities of these individuals, or information that would allow them to be identified, will not shed light on the conduct of the Agency's activities or operations beyond what is already publicly available.

46.    In light of the significant privacy interests and the lack of any qualifying public interest, I have found that the names and other personally identifiable information would constitute a clearly unwarranted invasion of personal privacy under the exemption (b)(6) standard. Therefore, CIA properly withheld the names and identifying information of the individuals mentioned in the documents, including CIA covert and overt employees. To the extent the withheld names and other identifying information pertains to CIA personnel, exemption (b)(6) applies coextensively with exemption (b)(3) in conjunction with section 6 of the CIA Act.

V.    **SEGREGABILITY**

47.    In evaluating the responsive records, the CIA conducted a page-by-page and line-by-line review of each document and released all reasonably segregable, non-exempt

-24-

information. In many instances in this case, much of the withheld information is protected by multiple, overlapping FOIA exemptions. In conducting its evaluation of the responsive documents, the CIA carefully reviewed the information in comparison with the classification and dissemination control markings on each document when making its release determinations. In instances where the CIA reviewed information marked as classified and determined that the information no longer met the standards for classification under Executive Order 13526, that information was declassified. CIA thus released information in certain paragraphs in the records that were previously marked as SECRET where it was determined that the information was nonexempt and segregable. In instances where no segregable, nonexempt portions of the documents could be released without potentially compromising classified information or other information protected under the FOIA, the document or portion was withheld from Plaintiff in full.

48. In sum, the information withheld by CIA is protected by exemptions (b)(1), (b)(2), (b)(3), (b)(5), and/or (b)(6), because it is classified, related solely to the internal personnel rules or practices of an agency, statutorily-protected, protected by the deliberative process privilege, and/or would constitute a clearly unwarranted invasion of personal privacy. After reviewing the records at issue, I have

-25-

determined no additional information can be released without jeopardizing information that falls within the scope of one or more FOIA exemptions.

* * *

(U) I hereby declare under penalty of perjury that the foregoing is true and correct.

(U) Executed this 16th day of June 2026.


Mary C. Williams
Litigation and Investigations
   Information Review Officer
Information Review and Release Division
Central Intelligence Agency

-26-